**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JAMES HUBER,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 23-CV-0592** |
| | : | |
| **MADELYN S. FUDEMAN,** *et al.*, | : | |
| **Defendants.** | : | |

## MEMORANDUM

**GALLAGHER, J.**                                          **MARCH 8, 2023**

James Huber, an inmate at SCI Houtzdale, filed this action asserting claims against Judges Madelyn S. Fudeman and Theresa M. Johnson of the Berks County Court of Common Pleas, Berks County Prothonotary Jonathan Del Collo, Berks County Treasurer Dennis Adams, Berks County District Attorney John T. Adams, Berks County Sheriff Eric J. Weaknecht, and the County of Berks.  All Defendants are named in their individual and official capacities.  Huber also seeks leave to proceed *in forma pauperis.*  For the following reasons, the Court will grant Huber leave to proceed *in forma pauperis*, dismiss the Complaint in part, and direct service for a responsive pleading on the remaining claims.

## I.      FACTUAL ALLEGATIONS[1]

Huber alleges constitutional violations and state law claims arising from the failure to disburse the proceeds of a Sheriff's sale.  Specifically, he asserts that on January 18, 2022, he received a Notice of Sheriff's Sale for property he owned in Bernville, Pennsylvania, advising him the property would be sold at public auction because the mortgage loan on the property was delinquent.  (Compl. at 7.)  The sale was conducted on April 8, 2022 by Defendant Sheriff

---

[1] The factual allegations are taken from Huber's Complaint (ECF No. 1.)  The Court adopts the pagination supplied by the CM/ECF docketing system.

Weaknecht, but Huber received no notification from Weaknecht, the Court of Common Pleas or any other Berks County official regarding the result of the sale until November 14, 2022. (*Id.* at 7-8.) On that day, he received a letter from a private asset recovery company telling Huber that an amount of $34,721.46 was collected from the sale in excess of the judgment owed by Huber to the bank holding the mortgage, which amount was due back to him. (*Id.* at 8.) On December 1, 2022, Huber submitted to Berks County Prothonotary Del Collo a Petition for Release and Remittance of Monetary Proceeds for filing with the Court of Common Pleas. (*Id.*) His pleading, however, was returned to him with a notice that he had to pay an $8 filing fee in order to have the pleading filed with the Court. (*Id.*) He resubmitted the pleading with an application to proceed *in forma pauperis*, but thereafter received no notification from either the Court or the Prothonotary. (*Id.* at 8-9.) Defendant Judge Fudeman allegedly presided over the loan foreclosure proceeding that led to the Sheriff's sale. (*Id.* at 9.) Huber alleges that he has sent letters to Defendants Judge Fudeman, Sheriff Weaknecht, and Treasurer Adams, but none have responded to him.[2]

Defendant Judge Johnson presided over the criminal trial that resulted in Huber's conviction. *See Commonwealth v. Huber*, CP-06-CR-0002794-2017 (C.P. Berks). The Commonwealth was represented by the Berks County District Attorney's Office. *Id.* Huber alleges his court-appointed attorney, "in deference to" Judge Johnson and Defendant Berks County District Attorney Adams failed to present an effective defense. (*Id.* at 10.) He alleges

---

[2] Attached to the Complaint is the Notice of Sheriff's Sale (Compl. at 21-24), the November 14, 2022 letter advising Huber of the excess proceeds (*id.* at 26), the petition Huber filed for release of the proceeds (*id.* at 31-36), the notice sent to Huber demanding he pay the filing fee (*id.* at 37), Huber's request to proceed *in forma pauperis* (*id.* at 38-39), and correspondence he sent to Prothonotary Del Collo, Sheriff Weaknecht, and Treasurer Adams, (*id.* at 43-48). He did not attach any correspondence with Judge Fudeman.

that the release of $34,721.46 of excess proceeds "is of critical importance to Plaintiff in order for him to be able to retain private counsel to assist him in advancing the claims alleged in his federal habeas corpus petition." (*Id*. at 10-11.)  Defendant Treasurer Adams is allegedly the custodian of the funds and has a familial relationship with District Attorney Adams.  (*Id*. at 11.)

Huber asserts he is lawfully entitled to the excess proceeds and that the Defendants' refusal to release the money violates his First, Fourth, and Fourteenth Amendment rights.  (*Id*. at 11-12.)  He alleges they have acted in concert to deprive him of the proceeds because, without access to the funds, he cannot retain private counsel to advance his *habeas* petition.  (*Id*. at 12.) He also asserts state law claims for breach of duty, negligence, willful misconduct, intentional fraud, wrongful imprisonment, intentional infliction of emotional distress, and concerted tortious action.  (*Id*.)  He seeks injunctive relief in the form of an order directing the Defendants to release the funds, and compensatory and punitive damages.  (*Id*. at 13.)

## II.     STANDARD OF REVIEW

The Court grants Huber leave to proceed *in forma pauperis*.[3]  Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted); *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021).  "At this early stage of the litigation,' '[the Court

---

[3] Because Huber is incarcerated, he must still pay the full amount of the filing fee in installments as required by the Prison Litigation Reform Act.

3

will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. As Huber is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

## III.    DISCUSSION

### A.    Claims Against Judges Fudeman and Johnson and Prothonotary Del Collo

Huber brings claims against Judges Fudeman and Johnson and Prothonotary Del Collo in their official and individual capacities. Huber asserts Judge Fudeman presided over the foreclosure proceeding, and he sent a letter to Judge Fudeman about the missing funds but she did not respond to him. He asserts only that Judge Johnson presided over his criminal trial, and his court-appointed attorney, "in deference to" Judge Johnson and DA Adams, failed to present an effective defense.[4] Huber alleges he submitted a Petition for Release and Remittance of Monetary Proceeds to the Court of Common Pleas by filing it with the Prothonotary, Defendant Del Collo, but it was returned to him with a notice that he had to pay a filing fee in order to have the pleading filed with the Court. He then resubmitted the pleading with an application to proceed *in forma pauperis*, but thereafter received no notification from either the Court or the Prothonotary. These claims are not plausible and must be dismissed.

---

[4] To the extent that this allegation calls into question Huber's criminal conviction, the claim cannot be raised in a § 1983 action. *See Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973) ("[W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus.")

Judges Fudeman and Johnson are entitled to absolute immunity from civil rights claims against them in their individual capacities that are based on acts or omissions taken in their judicial capacity, so long as they do not act in the complete absence of all jurisdiction.  *See Stump v. Sparkman*, 435 U.S. 349, 355-56 (1978); *Harvey v. Loftus*, 505 F. App'x 87, 90 (3d Cir. 2012) (*per curiam*); *Azubuko v. Royal*, 443 F.3d 302, 303-04 (3d Cir. 2006) (*per curiam*).  An act is taken in a judge's judicial capacity if it is "a function normally performed by a judge." *Gallas v. Supreme Ct. of Pa.*, 211 F.3d 760, 768 (3d Cir. 2000).  Moreover, "[g]enerally . . . 'where a court has some subject matter jurisdiction, there is sufficient jurisdiction for immunity purposes.'" *Figueroa v. Blackburn*, 208 F.3d 435, 443-44 (3d Cir. 2000) (quoting *Barnes v. Winchell*, 105 F.3d 1111, 1122 (6th Cir. 1997)).  Because judges must feel free to act without fear of incurring personal liability for their actions in court, judicial immunity remains in force even if the actions are alleged to be legally incorrect, in bad faith, malicious, or corrupt, *Mireles v. Waco*, 502 U.S. 9, 11-12 (1991), or are taken as a result of a conspiracy with others.  *Dennis v. Sparks*, 449 U.S. 24, 27 (1980).  Because all of the acts allegedly taken by Judges Fudeman and Johnson were functions normally performed by judges, namely presiding over foreclosure proceedings and criminal trials, and there is no suggestion that they lacked all jurisdiction to take those judicial acts, the civil rights claims against them must be dismissed with prejudice.[5]

Prothonotary Del Collo enjoys immunity from civil rights claims in his individual capacity for his alleged act of returning Huber's submission because Huber did not pay the filing

---

[5] For the same reasons, they are also entitled to absolute immunity from Huber's state law claims under Pennsylvania law.  *See Beam v. Daihl,* 767 A.2d 585 (Pa. Super. Ct. 2001) (holding that judges are absolutely immune from liability for damages when performing judicial acts, even if their actions are in error or performed with malice, provided there is no clear absence of jurisdiction over subject matter and person); *Feingold v. Hill,*  521 A.2d 33 (Pa. Super. Ct. 1987) (same).

fee in order to have the pleading filed with the Court.[6]  Courts have held that clerks of court and clerk's office employees enjoy absolute immunity and quasi-judicial immunity when performing duties required by statute or at the direction of judicial authority.  *See, e.g.*, *Lucarelli v. Norton*, No. 06-53, 2006 WL 709319, at *7 (M.D. Pa. Mar. 17, 2006); *Pokrandt v. Shields*, 773 F. Supp. 758, 765 (E.D. Pa. 1991) (noting that courts have held that clerks of court are entitled to immunity the same as judges); *DeFerro v. Coco*, 719 F. Supp. 379, 381 (E.D. Pa. 1989) (holding that absolute immunity extends to court clerk because he was a "nonjudicial officials whose activities are integrally related to the judicial process and involve the exercise of discretion comparable to that of a judge"); *Mercedes v. Barrett*, 453 F.2d 391, 392 (3d Cir. 1971); *Lockhart v. Hoenstine*, 411 F.2d 455, 460 (3d Cir. 1969) ("In addition to the recognized immunity enjoyed by judicial and quasijudicial officers, including prothonotaries, there exists an equally well-grounded principle that any public official acting pursuant to court directive is also immune from suit.").  Collecting the statutory filing fee is an act that falls within this immunity.  *See Evans v. Prothonotary of Supreme Ct. of Pa., W. Dist., Pittsburgh, Pa. 15219*, 324 F. Supp. 732, 733 (W.D. Pa. 1971) (holding that prothonotary was entitled to immunity for returning mandamus petition submitted without the statutory filing fee); *McLeod v. Fifth Jud. Dist. of Pennsylvania*, No. 20-1362, 2022 WL 13986832, at *3 (D.N.J. Oct. 24, 2022) (holding that clerk of court was immune from claim of harassment for enforcing a filing fee); *see also Mullis v. U.S. Bankr. Ct. for Dist. of Nev.*, 828 F.2d 1385, 1390 (9th Cir. 1987) (stating that "[c]ourt clerks have absolute quasi-judicial immunity from damages for civil rights violations when they perform tasks that

---

[6] Like the judicial Defendants, Del Collo also enjoys immunity from state law claims. *See Guarrasi v. Scott*, 25 A.3d 394, 405 (Pa. Commw. Ct. 2011).

are an integral part of the judicial process," and that "a mistake or an act in excess of jurisdiction does not abrogate judicial immunity, even if it results in 'grave procedural errors'"). Accordingly, the individual capacity claims against Judges Fudeman and Johnson and Prothonotary Del Collo are dismissed.[7]

### B.   Claims Against Berks County District Attorney John T. Adams

Huber also named Berks County District Attorney John T. Adams as a Defendant, asserting that the Berks County District Attorney's Office represented the Commonwealth in the criminal action that resulted in Huber's conviction, and "in deference to" Judge Johnson and DA Adams, Huber's court-appointed counsel failed to present an effective defense.  (Compl. at 10.) Notably, Huber fails to allege that DA Adams had any connection to the proceeds of the Sheriff's sale, or had any role in the failure of Huber to recover the excess proceeds, other than to assert that he and Treasurer Adams are related.

"A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable.  *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *Dooley v.*

---

[7] To the extent Huber intended to raise official capacity claims for money damages against Judges Fudeman and Johnson and Prothonotary Del Collo by checking that box on the form complaint he used, those claims must also be dismissed.  These claims are actually claims against the Commonwealth of Pennsylvania because the Court these Defendants serve, the Berks County Court of Common Pleas, is part of Pennsylvania's unified judicial system.  *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. N.Y.C. Dept. of Soc. Servs.*, 436 U.S. 658, 690, n. 55 (1978)); *see also* Pa. Const., art. V, § 1 (stating the "judicial power of the Commonwealth shall be vested in a unified judicial system consisting of . . . . courts of common pleas"), and § 15 (stating the "prothonotary and clerk of courts shall become the offices of prothonotary and clerk of courts of the court of common pleas of the judicial district").  As part of that system, the Court of Common Pleas shares in the Commonwealth's Eleventh Amendment immunity.  *Benn v. First Judicial Dist. of Pa.*, 426 F.3d 233, 241 (3d Cir. 2005).  As there is no indication Pennsylvania has waived its Eleventh Amendment immunity, Huber's official capacity claims against Judge Fudeman, Judge Johnson, and Prothonotary Del Collo are barred by the Eleventh Amendment.

*Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at 1207)).  Because there is no allegation that DA Adams was involved with the proceeds of the Sheriff's sale, the claim against him based on Huber's failure to receive the excess funds must be dismissed.  To the extent that the claim against DA Adams, as the elected district attorney, may be based on his Office's representation of the Commonwealth in the criminal case against Huber, he would be entitled to absolute immunity.[8]  *Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976) (holding that prosecutors are entitled to absolute immunity from liability under § 1983 for acts that are "intimately associated with the judicial phase of the criminal process" such as "initiating a prosecution and . . . presenting the State's case"); *Van de Kamp v. Goldstein*, 555 U.S. 335, 348-49 (2009) (holding that district attorneys and other supervisory prosecutors are likewise entitled to absolute immunity from claims based on their role in pursuing a prosecution on behalf of the Commonwealth).  Accordingly, the individual capacity claims against DA Adams are dismissed.

### C.    Official Capacity Claims Against Berks County Officials and the County of Berks

Huber names DA Adams, Treasurer Adams, and Sheriff Weaknecht in their official as well as individual capacities.  He also names Berks County as a Defendant.  These claims are also not plausible.

The official capacity claims against the Berks County officials are identical to the claim against Berks County, the entity that employs them.  *See Kentucky v. Graham*, 473 U.S. 159,

---

[8] Absolute prosecutorial immunity also applies to the Pennsylvania state law claims.  *See Miller v. Nelson*, 768 A.2d 858, 861 (Pa. Super. Ct. 2001) (holding that a district attorney "enjoys absolute immunity from liability for civil damages for actions related to prosecution of a criminal case.")

165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. N.Y.C. Dept. of Soc. Servs.*, 436 U.S. 658, 690, n. 55 (1978)).  To plead a plausible official capacity/municipal liability claim under § 1983, a plaintiff must allege that the municipality's policy or custom caused the violation of his constitutional rights.  *See Monell*, 436 U.S. at 694.  "To satisfy the pleading standard, [the plaintiff] must . . . specify what exactly that custom or policy was." *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009).  "'Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict.'"  *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)).  "'Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.'"  *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)).  For a custom to be the proximate cause of an injury, a plaintiff must establish that the Defendant "had knowledge of similar unlawful conduct in the past, failed to take precautions against future violations, and that its failure, at least in part, led to [plaintiff's] injury."  *Id.* (internal quotations and alterations omitted).  "Local governing bodies [and local officials sued in their official capacities] . . . can be sued directly under § 1983 for . . . injunctive relief."  *Monell*, 436 U.S. at 690.  Such a suit is appropriate "in those situations where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted or promulgated by that [local governing] body's officers."  *Id.*

Huber does not allege that the failure to remit to him the balance of the proceeds from the sale of his property was a result of a policy or custom of Berks County.  Rather, he asserts only that the Defendants acted in concert to deprive him of the proceeds and, without access to the funds, he cannot retain private counsel to advance his *habeas* petition.  (Compl. at 12.)  Because he has failed to allege a plausible *Monell* claim, the claims against Berks County and the official capacity claims against the named Berks County officials will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

## IV.    CONCLUSION

For the reasons stated, all claims asserted against Judges Madelyn S. Fudeman and Theresa M. Johnson of the Berks County Court of Common Pleas, Berks County Prothonotary Jonathan Del Collo, and Berks County District Attorney John T. Adams will be dismissed with prejudice.  The individual capacity claims against Berks County Treasurer Dennis Adams and Berks County Sheriff Eric J. Weaknecht will be served for a responsive pleading at this time. The official capacity claims against DA Adams, Treasurer Adams, and Sheriff Weaknecht, and the *Monell* claim against the County of Berks will be dismissed without prejudice.[9]

An appropriate Order follows.

**BY THE COURT:**

*/s/ John M. Gallagher*
**JOHN M. GALLAGHER, J.**

---

[9] In drafting his Complaint, Huber checked the boxes on the form he used indicating that he wanted to name the Defendants in their individual and official capacities.  While the Court has screened the official capacity claims as presented, because Huber may not to have fully understood the implication of checking the official capacity box, the Court will not delay service of his Complaint at this time.  Rather, the Court will entertain a motion to reassert the official capacity/*Monell* claims if Huber indicates he can allege he was harmed as a result of some policy or custom of Berks County.